MAINS et al., Appellants,

v.

STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, Appellee.

[Cite as *Mains v. State Auto. Mut. Ins. Co.* (1997), 120 Ohio App.3d 534.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE10–1434.

Decided June 24, 1997.

*Hadden Co., L.P.A.*, and *E. Bruce Hadden*, for appellants.

*William J. Christensen*, for appellee.

DESHLER, Judge.

Plaintiffs-appellants, D.L. Mains, Jr., and Ted R. Howard, appeal from the decision of the Franklin County Court of Common Pleas granting summary judgment to defendant-appellee, State Automobile Mutual Insurance Company ("State Auto").

This matter arises out of State Auto's refusal to defend, under a general business liability policy, an underlying lawsuit filed against appellants by Dawn Springer, a former employee of appellant D.L. Mains, Jr. Both Mains and Howard, as well as J. David Harris, who is now deceased and not a party to this appeal, were attorneys who shared office space commencing in June 1980. Each attorney maintained his own stationary, accounts, and separate practice, but, at times, they shared staff, telephones, and equipment. During Springer's employment with Mains, each attorney employed his own secretarial staff. All attorneys were covered under the State Auto policy, with Mains as the named insured and Howard and Harris as additional insureds. Mains hired Springer as a secretary in July 1992. Early in her employment, she notified Mains that she was HIV positive. Mains fired Springer in February 1993, allegedly because of her HIV-positive condition.

On December 1, 1993, Springer filed suit against Mains, Howard, and Harris, asserting the following claims: wrongful termination in violation of R.C. 4112.02(A), intentional infliction of emotional distress, negligent infliction of emotional distress, and tort damages for termination in violation of public policy. Mains and Howard advised State Auto that they had been named defendants in the lawsuit, and requested that State Auto defend the action under the provisions of its business owners' policy. State Auto refused to defend, asserting that the claims alleged in Springer's suit did not fall within the policy because none of the claims asserted by Springer was even arguably within either the personal injury or bodily injury coverage provided by the policy. Thereafter, Howard obtained a defense from his homeowner's insurance carrier; Mains and Howard successfully defended against Springer's claims, prevailing in a jury trial.

On April 25, 1995, Mains and Howard filed their complaint in the present action, followed by an amended complaint. The matter was submitted to the

court on cross-motions for summary judgment, including affidavits and exhibits. The trial court issued its decision on August 23, 1996, finding that State Auto was not arguably or potentially liable under either its personal injury or bodily injury coverage. The court further found that State Auto's adjuster had made a reasonable investigation prior to refusing to defend, and that State Auto had acted in good faith when refusing to defend the Springer litigation. The trial court made no determination on the issue of whether either the "intentional acts" or "course of employment" exclusions found in the policy would also have precluded coverage.

Appellants have timely appealed and bring the following assignments of error:

"1. The trial court erred in determining as a matter of law that the pleadings in the underlying law suit did not arguably or potentially state claims for which there might be coverage under State Automobile Insurance Company's personal injury coverage.

"2. The trial court erred in determining as a matter of law that State Automobile Insurance Company made a fair and reasonable investigation prior to refusing to defend D.L. Mains, Jr. and Ted R. Howard.

"3. The trial court erred in determining as a matter of law that the pleadings in the underlying lawsuit did not arguably or potentially state claims for which there might be coverage under State Automobile Insurance Company's bodily injury coverage.

"4. The trial court erred in determining as a matter of law that State Automobile Insurance Company acted in good faith in refusing to defend D.L. Mains, Jr. and Ted R. Howard in the underlying lawsuit."

Initially we note that this matter was decided on summary judgment. In accordance with Civ.R. 56, the evidence must be construed most strongly in favor of the nonmoving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come but to one conclusion, which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which the party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus, following *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265.

The general issue before us is whether the underlying lawsuit brought by the terminated employee, Dawn Springer, stated any claim for which either liability or litigation coverage should have been provided by State Auto under its insurance policy. Appellant correctly points out that there is a vast difference

between the duty to defend and the duty to indemnify. Where the insurer's duty to defend is unclear from the complaint brought against the insured, but the allegations therein state a claim which might arguably or potentially be within the policy coverage, or where there is some doubt whether a theory of recovery within coverage has been pleaded, the insurer, must, as a rule, accept the defense. *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 180, 9 OBR 463, 465–466, 459 N.E.2d 555, 558; *Great Am. Ins. Co. v. Hartford Ins. Co.* (1993), 85 Ohio App.3d 815, 818, 621 N.E.2d 796, 798–799. Even though the underlying action eventually produces a result which does not trigger a duty to indemnify under the policy, this fact is not determinative of whether the insurer had a duty to defend the action. *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 80, 23 OBR 208, 209–210, 491 N.E.2d 688, 690. Where multiple claims are asserted, only some of which arguably fall within coverage, the insurer must defend the insured on all claims. *Id.*

The applicable sections of the policy in the instant case provide coverage as follows:

"This insurance applies:

"(1) To 'bodily injury' and 'property damage' only if:

"(a) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

"(b) The 'bodily injury' or 'property damage' occurs during the policy period.

"(2) To:

"(a) 'personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you[.]"

The terms "bodily injury," "occurrence," and "personal injury" are defined in the policy as follows:

" **'Bodily injury'** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

" * * *

" **'Occurrence'** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

" **'Personal injury'** means injury, other than 'bodily injury', arising out of one or more of the following offenses:

" * * *

"d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services * * *."

In addition, the policy contains certain express exclusions from coverage as follows:

"This insurance does not apply to:

"a.   'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured.   This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property.
" * * *

"e.   'Bodily injury' to:

"(1) An employee of the insured arising out of and in the course of employment by the insured[.]"

■   Appellants' first and third assignments of error present interrelated issues that are argued together in the brief and will be addressed together in this opinion.   Appellants first argue that appellee should have provided a defense in the underlying action because the termination of Springer by appellant Mains might have constituted "disparagement" of Springer's "products" or "services," which would fall under section F(10)(d) of the policy, which includes under the definition of "personal injury" "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."

A review of Springer's complaint and amended complaint in the underlying action reveals that nowhere did she assert that she had been wrongfully discharged on the basis of her job performance.   While evidence was subsequently introduced at trial that Mains and Howard considered Springer's work performance substandard, Springer's complaint simply did not seek recovery on this basis;   even had she introduced evidence tending to show that she had been harmed, for example, by inaccurate work performance evaluations communicated to other potential employers, Springer would not have recovered because this was not in conformity with the theories pleaded in her complaint.   Without specifically deciding the issue as appellants would seek to frame it, that is, whether termination of an employee can constitute "disparagement" of that employee's work performance, we find that coverage was not arguably or potentially provided under the policy because all of Springer's claims presented theories of recovery based upon wrongful termination due to her HIV-positive condition. Had Springer set forth a claim sounding in libel, slander, defamation, or some similar theory of recovery based upon the wrongful publication by appellants of

untrue or inaccurate information regarding her job performance ("goods and services"), then a duty to defend might have arisen. However, this was not the claim made by Springer against appellants, and no coverage under the "personal injury" coverage of the policy was arguably or potentially available.

Appellants further argue that State Auto's policy defines "personal injury" in an extremely broad manner, as being injury "other than bodily injury." Appellants therefore argue that the policy should provide coverage for injuries such as "extreme anxiety, emotional distress, humiliation and embarrassment" as stated in Springer's complaint in the underlying action. Unfortunately for appellants, while it is true that the policy does initially define personal injury as meaning injury other than bodily injury, the policy further goes on to state that the personal injury must *arise out of* a specifically enumerated series of "offenses." The only such action on the part of appellants that has been argued in this appeal is "disparagement." As set forth above, Springer's complaint in the underlying action did not allege any harm arising from disparagement on the part of appellant.

The next issue to be examined is whether any of the claims asserted by Springer in the underlying complaint potentially or arguably would fall under the definition of bodily injury caused by an "occurrence" as defined in the policy. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Although the trial court did not address the issue in its decision, appellee points out, and we agree, that the intentional termination of an employee, whether for reasons permissible or impermissible, does not constitute an "occurrence" as defined under the policy. Furthermore, the complaint in the underlying action alleges that the acts of appellants caused Springer extreme anxiety, emotional distress, loss of income, expense, and embarrassment. In *Reichard v. Nationwide Mut. Fire Ins. Co.* (Dec. 10, 1992), Montgomery App. No. 13392, unreported, 1992 WL 361829, the court considered a similar claim for emotional distress under a similarly worded definition of bodily injury. The policy in *Reichard* defined bodily injury as follows: " 'bodily injury' means 'bodily harm, sickness or disease, including result care, loss of services, and death.' " *Id.* at 2. The court in *Reichard* reasoned that a majority of courts interpret the word "bodily" as referring to the physical or corporeal as opposed to the mental or emotional aspect of the individual:

"The majority view holds that emotional distress, in the absence of some physical harm, does not constitute a 'bodily injury.' * * *

"While few Ohio courts have addressed the issue of what constitutes a bodily injury, those having done so follow the majority view. For instance, in *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, at 14 [540 N.E.2d 716, at 719], the Ohio Supreme Court defined 'bodily injury' as 'an injury caused by external violence,' and found that loss of consortium did not constitute such an injury because it does 'not [involve] an injury to the * * * body.

"In *Vance v. Chong* (Nov. 9, 1990), Lake No. 88–L–13–188, unreported [1990 WL 174121], the Court of Appeals for Lake County, citing *Tomlinson,* likewise restricted the term 'bodily injury' to physical injuries in accordance with the majority view. In *Vance,* the court examined an insurance policy which defined 'bodily injury,' as in this case, as 'bodily harm, sickness or disease,' and held that severe and extreme emotional distress was not a 'bodily injury' contemplated by the definition in the policy.

" * * *

"Courts faced with the task of interpreting insurance policies containing definitions of 'bodily injury' similar or identical to the definition the Reichard's policy have generally (1) attached no significance to the fact that the modifier 'bodily' was not repeated before the words 'sickness' and 'disease,' (2) noted that the word 'bodily' was not repeated prior to these latter words but found that 'bodily' nonetheless modified those latter words, or (3) determined that even without the modifier, the words 'sickness or disease' do not encompass the concept of emotional distress. [Citations omitted.]

"We need not consider whether the words 'sickness' or 'disease,' in and of themselves, encompass the concept of emotional distress because the policy definition of 'bodily injury' in this case excludes emotional distress injuries. The adjective 'bodily' modifies all of the words in the definition, *i.e.,* 'harm, sickness or disease.' Common sense dictates this construction of the definition. First, the term being defined is 'bodily injury.' Thus, it is reasonable to conclude that any word employed in the definition would relate in·some way to the words 'bodily' and 'injury.' As we noted *supra,* the word 'bodily' generally denotes the physical or corporeal aspects of a person, and therefore the words within the definition would relate to those aspects of the person as well. Second, the phrase 'sickness or disease' is part of a series of nouns, separated by a comma, and preceded by the modifier 'bodily.' In a sentence so constructed, it is not necessary to repeat the modifier before each noun, for to do so would be unduly repetitive and unnecessarily awkward." *Id.*

We find that a similar construction of the definition of the policy before us is the clear and unambiguous reading of the policy language. "Bodily" must be taken to modify the terms of injury, sickness, and disease, as enumerated in the definition. This is in accordance with the Ohio Supreme Court holding in

*Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 14, 540 N.E.2d 716, 719, in which the Ohio Supreme Court defined "bodily injury" as "an injury caused by external violence." See, also, *Hillman v. Hastings Mut. Ins. Co.* (Sept. 22, 1992), Franklin App. No. 92AP–717, unreported, 1992 WL 246031, reversed on other grounds (1994), 69 Ohio St.3d 1203, 631 N.E.2d 157 ("[T]he policy defines 'bodily injury' as follows: bodily injury means bodily harm, sickness or disease, including death that results. Thus the phrase does not apply to mental stress, emotional discomfort or other forms of injury which are not literally physical in nature."). There is no allegation in the underlying complaint brought by Springer alleging bodily injury as defined under the policy and relevant case law.

In summary, appellants have failed to demonstrate that the trial court erred in concluding that, as a matter of law, the allegations contained in Springer's complaint in the underlying action potentially or arguably set forth a claim for personal injury as defined in the policy, or for bodily injury caused by an occurrence as defined in the policy.

Furthermore, even if we were to find that bodily injury caused by an occurrence as defined under the policy had arguably been pleaded in the underlying case, the two applicable exclusions from coverage contained in the policy would still serve to preclude coverage. The policy expressly excludes bodily injury "expected or intended from the standpoint of the insured." The policy also excludes bodily injury to "an employee of the insured arising out of and in the course of employment by the insured." Since it is a normally anticipated consequence of termination of an employee that the fired employee would experience emotional distress, the damages claimed by Springer would clearly relate to consequences "expected," although not necessarily desired or intended, from the point of view of the employer. Furthermore, termination of an employee by definition arises out of employment, and thus coverage would be precluded by the second exclusion set forth above.

In accordance with the foregoing, appellants have not demonstrated that Springer's underlying action arguably or potentially raised claims coming within the coverage of the policy, and the trial court did not err in finding that appellee had no duty to defend under the policy. Appellants' first and third assignments of error are therefore without merit and are overruled.

Appellants' second and fourth assignments of error assert that the trial court erred in concluding that State Auto conducted a fair and reasonable investigation before declining to defend the underlying action, and that State Auto acted in bad faith in doing so. Because our determination with respect to appellants' first and third assignments of error is that there was no duty to defend in this matter, and in doing so we relied upon the same materials and pleadings as relied upon by State Auto in declining to defend, the logical conclusion is that there was neither

a failure to investigate adequately by State Auto nor any bad faith on the part of State Auto. Appellants' second and fourth assignments of error are accordingly overruled.

In accordance with the foregoing, appellants' first, second, third, and fourth assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas granting summary judgment for appellee is affirmed.

*Judgment affirmed.*

PETREE and CLOSE, JJ., concur.