GRANGE MUTUAL CASUALTY COMPANY, Appellee,

v.

ROSKO et al., Appellants.

[Cite as *Grange Mut. Cas. Co. v. Rosko,* 146 Ohio App.3d 698, 2001-Ohio-3508.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 00–C.A.–221.

Decided Dec. 19, 2001.

700

Pfau, Pfau & Marando and William E. Pfau III, for appellee.

Pelini & Fischer, Ltd., Craig G. Pelini and Cari Fusco Evans, for appellants.

---

WAITE, Judge.

{¶ 1}  This is a timely appeal from an order issued by the court of common pleas on September 21, 2000, granting appellee Grange Mutual Casualty's motion for summary judgment against Thomas Rosko, Brian Rosko and Westfield National Insurance Company ("appellants").  The order also denied appellants' cross-motion for summary judgment.  Based on the following, the trial court's decision granting summary judgment against appellants and in favor of appellee is not supported by the record and warrants reversal.

{¶ 2}  The circumstances surrounding this case stem from an automobile accident that occurred on July 6, 1992, where a 1992 Isuzu Amigo carrying ten teenagers crashed when the driver lost control.  Although there was some dispute about the circumstances surrounding the occurrence, the story that emerged from witnesses in the hours that followed the crash indicated that the driver, Nicholas Napoli, had been operating the vehicle in a reckless manner.  Some of the witnesses reported that Brian Rosko, a front seat passenger, suddenly grabbed the steering wheel and jerked it, precipitating Napoli's loss of control and the ensuing accident.  Brian Rosko could not recount whether he actually grabbed the steering wheel, but confirmed that he had intended to do so.

{¶ 3}  Several passengers sustained substantial injuries in the incident and pursued claims for compensation.  The vehicle involved was covered by a policy of insurance held by the driver's mother and issued by appellee.  That policy provided liability coverage as follows:

{¶ 4}  "We will pay for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident * * *  In addition to our limit of liability, we will pay all defense costs we incur.  Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted."  (Grange Auto Ins. Policy, Part A—Liability Coverage, Section A.)

{¶ 5}  The policy defines an "insured" in this context as "Any person using your covered auto * * *."  (Grange Auto Ins. Policy, Part A—Liability Coverage, Section B.)

{¶ 6}  Nowhere does the policy define or describe the word "using."  The limits of the liability coverage under Grange's policy are $100,000 for each individual claiming bodily injury with a $300,000 maximum per accident.

{¶ 7} Shortly after the incident, appellee retained Independent Insurance Adjustors of Youngstown, Ohio, to investigate and negotiate the passengers' claims on appellee's behalf. During this investigation, appellee learned of Brian Rosko's possible involvement in the accident. A handwritten memorandum dated October 27, 1992, on Grange letterhead (Exhibit D, appellant's brief) asks whether the addressee has "put Brian Rosko's Insurance Carrier on notice" with respect to his liability.

{¶ 8} The adjustor's January 28, 1993, demand letters to the claimants' attorneys are written exclusively on behalf of the Napolis. In that correspondence the adjustor advised that Brian Rosko and his parents were insured through Westfield and that appellee's adjustor intended to take Brian Rosko's sworn statement about the accident. On May 17, 1993, Grange settled April Linker's bodily injury claim against the Napolis for the $100,000 policy limit. April Linker then filed suit against Brian Rosko. Later, several of the vehicle's other passengers brought causes of action against the Napolis and Brian Rosko. In an interpleader action filed on September 1, 1994, appellee tendered the balance of its policy limits to the court for distribution among the various claimants on the Napolis' behalf. Appellee settled all of the claims pertaining to the Napolis, and the cases against Brian Rosko were eventually consolidated for trial.

{¶ 9} At no time following the accident did appellee offer to indemnify, undertake to defend, assume the cost of defending, or otherwise act on behalf of Brian Rosko. Westfield insured the Rosko family through a policy that specifically limited liability coverage for vehicles that the insured did not own, deeming it to be excess over any other collectible insurance. (Coverage G, Section IV, Part 3a, at 22 of policy and Section V, Part 2, Other Insurance, at 25 of policy.)

{¶ 10} Westfield contacted appellee in July 1993 after the Linkers had filed suit against Brian Rosko, and requested that it defend and indemnify Brian Rosko in the pending suit in light of his status as an insured under appellee's policy with the Napolis. Appellee refused Westfield's request, maintaining that it had exhausted the limits of liability coverage for bodily injury when it settled the case with the Linkers. In any event, appellee advised, Brian Rosko was not covered under its policy with the Napolis in light of a clause that excluded liability coverage "for any person using a vehicle without a reasonable belief that that person is entitled to do so." (Grange Auto Ins. Policy, Part A—Liability Coverage, Exclusions–A[8].)

{¶ 11} Westfield then directed its counsel to defend Brian Rosko in the consolidated lawsuit alleging his negligence in connection with the accident, given appellee's refusal. This suit proceeded to a jury trial where Brian Rosko ultimately prevailed. The jury found that the plaintiffs had failed to prove that

Brian Rosko was negligent or that his conduct precipitated the accident. In a special interrogatory, the jury found that the plaintiffs had failed to prove that Brian Rosko had ever taken hold of the vehicle's steering wheel.

{¶ 12} In an amended counterclaim, appellants sought to recover from appellee the attorney fees and costs Westfield expended during its defense of Brian Rosko. Both parties filed motions for summary judgment and partial summary judgment. On September 21, 2000, the court granted appellee's motion. In doing so, the trial court found as follows:

{¶ 13} "1. that Westfield, not Grange, had a duty to defend Brian Rosko in the negligence action arising out of the accident of July 6, 1992, because Grange had exhausted its coverage; and

{¶ 14} "2. that even though Brian Rosko had been a user-passenger in the Isuzu, he was not an insured user-operator. Thus, he was not entitled to a defense by Grange and was so informed on August 9, 1993."

{¶ 15} In light of these findings, the trial court concluded that appellee owed no duty to defend the Roskos and had no obligation to reimburse Westfield for its defense. Appellant filed this timely appeal.

{¶ 16} In their first assignment of error, appellants maintain as follows:

{¶ 17} "The trial court erred as a matter of law in finding that Brian Rosko was not an insured under the Grange policy and, in turn, erred in failing to find that Grange owed Brian Rosko a duty of good faith and a duty to defend as its insured."

{¶ 18} Appellants contend that summary judgment on behalf of appellee was improper in this case because Brian Rosko was an insured under the terms of the insurance policy between appellee and the Napolis. Appellants maintain that appellee was required by the dictates of its own policy to defend Brian Rosko against the liability claims filed by several of the vehicle's other passengers.

{¶ 19} This matter was disposed of on a motion for summary judgment. This court subjects a trial court's decision to grant summary judgment to de novo review. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. In other words, an appeal of the trial court's decision to grant summary judgment is accorded no deference and this court must undertake an independent review of the judgment. *Bell v. Horton* (1996), 113 Ohio App.3d 363, 365, 680 N.E.2d 1272.

{¶ 20} In ascertaining the merits of a motion for summary judgment, Civ.R. 56 requires the trial court to view the evidence presented in a light most favorable to the nonmoving party. Civ.R. 56(C). To prevail on a summary judgment motion the moving party must demonstrate that (1) no genuine issue of

material fact remains to be litigated, and (2) it appears from the evidence that reasonable minds can only reach one conclusion. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377.

{¶ 21}   In order to decide this matter, we are required to undertake a two-step analysis.   First, this court must determine Brian Rosko's status under the terms of appellee's automobile insurance policy with the Napolis.   Second, if Brian Rosko was an insured under the Napoli policy, we must then resolve the issue as to whether appellee had an obligation to defend him or reimburse Westfield for the costs of providing his defense.

{¶ 22}   The duty to defend is broad and treated as distinct from the duty to indemnify. *Mains v. State Auto. Mut. Ins. Co.* (1997), 120 Ohio App.3d 534, 538, 698 N.E.2d 488.   An insurer is obliged to defend the insured against an action if the claim alleges conduct which falls within the scope of the applicable policy. *Cremeans v. Nationwide Mut. Fire Ins. Co.* (Nov. 27, 2000), Mahoning App. No. 841, 2000 WL 1741737, citing *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874.

{¶ 23}   Even where the duty to defend is unclear from the complaint brought against the insured or where there exists some doubt about whether the theory of recovery falls within the scope of the policy, if the allegations state a claim which may arguably or potentially fall within policy coverage, the insurer must, as a rule, accept the defense. *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 180, 9 OBR 463, 459 N.E.2d 555.

{¶ 24}   Based on the plain language of the policy, Brian Rosko appears to fall within the definition of an insured.   The section entitled "Liability Coverage" states that appellee will settle or defend claims or suits seeking compensation for property damage and bodily injury sustained when *any* insured becomes legally responsible for an automobile accident up to its policy limits.   That section further provided that, "in addition to our limit of liability, we will pay all defense costs we incur" and that "our duty to settle or defend ends when our limit of liability for this coverage has been exhausted."   (Grange Auto Ins. Policy, Part A—Liability Coverage, Section A.)

{¶ 25}   Accordingly, whether those terms obliged appellee to defend Brian Rosko or reimburse him for the expenditures Westfield incurred in doing so depends on whether Brian Rosko fell within the policy's definition of an "insured."   The policy provides that any person "using" the covered automobile is an "insured."   The policy does not define the term "using."   Nevertheless, it is well settled that undefined words in an insurance policy must be afforded their plain and ordinary meaning. *Burris v. Grange Mut. Cos.* (1989), 46 Ohio St.3d 84, 89, 545 N.E.2d 83.

{¶ 26} The term "using" is usually construed to include all proper uses of an automobile. 7 Appleman, Insurance Law and Practice (Buckley Ed. 1979), Section 4316; 12 Couch on Insurance 3d (1984), Section 45:64. Few cases, however, have interpreted the term in the context presented by the matter presently before this court.

{¶ 27} A "use" provision identical to the one at issue here was discussed at length in a case involving similar facts out of Texas. There, a Texas court of appeals concluded that a passenger simply riding in a vehicle was "using" it under the terms of the policy. *U.S. Fire Ins. Co. v. United Serv. Auto. Assn.* (Tex.App.1989), 772 S.W.2d 218, 221. In addition, that court concluded that a passenger who grabs the steering wheel of a moving vehicle is also "using" it within the meaning of such a liability policy. Id. See, also, *Natl. Am. Ins. Co. v. Ins. Co. of N. Am.* (1977), 74 Cal.App.3d 565, 140 Cal.Rptr. 828 (passenger throwing an egg at pedestrian from vehicle was deemed a "user" for purposes of liability coverage under an insurance policy); and *Transamerica Ins. Group v. United Pacific Ins. Com.* (1979), 92 Wash.2d 21, 593 P.2d 156 (passenger who injured driver while removing shotgun from gun rack inside vehicle found to be "using" the vehicle and therefore covered under driver's automobile insurance policy).

{¶ 28} A similar approach to such insurance policy "use" provisions was adopted in *Semenovich v. State Farm Fire & Cas. Co.* (July 19, 1999), Stark C.P. No. 1999CV00411. An unpublished order from the court of common pleas, *Semenovich* is plainly not binding on this court. The case, however, includes a detailed and instructive discussion of the term "using" in a context similar to that presented by the instant case. In *Semenovich*, the plaintiff, one of three insurance companies whose policies were triggered by the underlying accident, sought a determination with respect to the priority of coverage after a passenger in a vehicle fired a paintball gun into a group of people and injured one of them.

{¶ 29} The analysis in *Semenovich* turned on whether the vehicle's passenger was "using" the vehicle as contemplated by an insurance policy held by the vehicle owner. Just as in our present case, the *Semenovich* policy provided liability insurance coverage to anyone using the covered automobile, but then failed to define the term "using." The trial court concluded that by simply being a passenger in the vehicle, that passenger was making "use" of it. Therefore, the passenger/user was entitled to liability coverage under the applicable policy of insurance. Id. at 6. In so doing, the trial court remarked that, given that State Farm authored the policy, it could have inserted language defining the term "using" as it had done with other policies. State Farm could have explicitly limited coverage for damages to only certain uses or users, but did not.

{¶ 30} In the matter before us, appellee drafted the contract of insurance with the Napolis. Appellee could have crafted the policy any way it desired, within the requirements of the law. As with many policies, appellee had the authority to limit the Napolis' liability coverage to those accidents, "arising out of the use or operation" of the named insured. It neglected to do so, framing the policy instead to insure anyone using the vehicle.

{¶ 31} An insurer must draft its policy carefully, using language that is clear, unambiguous and consistent with the requirements of the law. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 212–213, 519 N.E.2d 1380. Moreover, where the insurer fails in this regard by fashioning contractual provisions that are "reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 664, 710 N.E.2d 1116.

{¶ 32} Barring any definition, description or limiting language in the policy construing the term "using" or "user," appellee's contention that merely the act of being a passenger is not "using" the vehicle to determine who is insured under the policy is mystifying. Given *Semenovich*, authority from other jurisdictions and a plain commonsense approach to an interpretation of the use provision employed in appellee's policy, the trial court was required to resolve any doubts about the meaning of that provision in Brian Rosko's favor. The court failed in this regard, instead manufacturing a user-passenger/user-operator distinction unsupported anywhere on the record. Based on the plain language in the policy as well as the limited authority interpreting policy "use" provisions, there is no question that Brian Rosko was "using" the Napoli vehicle as a passenger under the terms of appellee's policy and the trial court's determination to the contrary was erroneous.

{¶ 33} Even if we could agree with appellee and the trial court that Brian Rosko was not "using" the vehicle as a passenger, appellee's counsel readily admits that, if the allegations regarding Brian's attempt to take control of the wheel were true, Brian would then be "using" the vehicle sufficiently to be considered an insured under the policy even applying appellee's definition. Given the record before us, appellee discovered these allegations very early in its investigation of the matter. In fact, these allegations appear in the police reports of the incident. Thus, even under appellee's flawed definition of "using" the vehicle, appellee knew almost immediately that Brian Rosko may be entitled to protection under the policy as an insured. Therefore, appellee's attempt to add limiting language to the definition of an insured in the policy where none exists also fails and the trial court's decision was erroneous on this basis, as well.

There are no material facts at issue here. Summary judgment should be granted to appellant, in this matter.

{¶ 34} In its second and third assignments of error appellants maintain:

{¶ 35} "The trial court erred as a matter of law in finding that Grange exhausted the limits of its policy in good faith based upon its complete failure to take any action on behalf of its insured, Brian Rosko.

{¶ 36} "The trial court erred in failing to find as a matter of law that Westfield's obligation to Brian Rosko was as an excess carrier and that Westfield is entitled to reimbursement from Grange for all attorneys' fees and costs incurred in the successful defense of Brian Rosko."

{¶ 37} These assignments are interrelated and will be addressed together. Appellants here maintain that if Brian Rosko was an insured under appellee's policy, appellee was obliged to provide for his defense and it exhausted its policy limits prior to providing such defense in bad faith. This is true because appellants claim that if Brian Rosko was an insured under appellee's policy of insurance, then appellee, as the primary insurer, had the primary duty to defend him against potential liability claims.

{¶ 38} The record reflects that from the beginning, appellee ignored its duty and even its potential duty to Brian Rosko. Appellee opted instead to exhaust the policy by settling all of the liability claims on behalf of the Napolis and to act solely on their behalf. As a result, Westfield, the excess insurer, was forced to defend Brian Rosko. Appellants maintain that this situation was unfair to Westfield. Appellants further argue that when Grange rapidly exhausted the policy by settling claims on behalf of the driver, it breached its concomitant duty of good faith with respect to its other insured, Brian Rosko.

{¶ 39} Setting aside for the moment the question of whether appellee acted in bad faith in refusing to defend Brian Rosko, this court has already concluded that appellee had such a duty. As a consequence, Westfield is necessarily entitled to reimbursement for expenses it incurred when it successfully defended appellee's insured.

{¶ 40} The complaint filed against Brian Rosko alleged that he directly and proximately caused the accident by negligently grabbing the Isuzu's steering wheel. Under the Napolis' insurance policy, appellee promised to settle or defend claims or suits seeking compensation for property damage and bodily injury sustained when *any* insured became legally responsible because of an auto accident up to its policy limits. Further, the policy explicitly provided that appellee's duty to pay defense costs was "in addition to our limit of liability." Since nothing in the policy excluded Brian Rosko from coverage, appellee's duty to defend was inescapable.

■ {¶ 41} Appellee proposes a laundry list of arguments in support of its effort to vitiate its duty to defend Brian Rosko. All of these arguments fail. First, appellee argues that Grange's handling of the matter was reasonably justified. Appellee notes that its complete rejection of Brian Rosko as an insured reflected "good practical sense, particularly in light of Westfield's refusal to make any payments from its limits toward resolution of claims against Brian Rosko." There is no support of record or in law for this position. Brian Rosko's decision to litigate rather than settle the lawsuits against him does not logically justify appellee's refusal to defend.

{¶ 42} Second, appellee argues that under the language of the policy, its duty to settle or defend ended when its limit of liability coverage was exhausted. Appellee relies on *Vorhees v. Cincinnati Ins.* (Sept. 28, 1992), Miami App. No. 91CA66, 1992 WL 302440. Appellee maintains that *Vorhees* stands for the proposition that where an excess carrier is involved, the primary carrier need not continue defending the insured after it exhausted the limits of its policy, absent evidence that the primary insurer did so in bad faith.

{¶ 43} *Vorhees* is completely inapplicable to the matter before us. While *Vorhees* does hold as appellee claims, the court explicitly based its holding on the unambiguous language of the insurance policy. Appellee claims that its policy contains identical language, but appellee omits the fact that its policy also obliges it to defend *in addition* to its other duties under the policy. (Grange Auto Ins. Policy, Part A—Liability Coverage, Section A.) As noted above, where a provision of an insurance policy is ambiguous, it will be construed strictly against the insurer and liberally in favor of the insured. *King*, 35 Ohio St.3d at 213, 519 N.E.2d 1380.

■ {¶ 44} The insurer can avoid its duty to defend only where there is no possibility that the allegations contained in a complaint could invoke the provided coverage. *Toth v. Gluck Ins. Co.* (Sept. 22, 1995), Mahoning App. Nos. 94CA85 and 94CA101, 1995 WL 562274. Once the court determines that the refusal to defend was wrongful, the insurer's good faith or bad faith in reaching its decision is irrelevant with respect to whether the insurer breached its contractual duty to defend. *Allen v. Std. Oil Co.* (1982), 2 Ohio St.3d 122, 126, 2 OBR 671, 443 N.E.2d 497.

{¶ 45} Further, as noted above, appellee was put on notice very early in the investigative process that it may owe a duty to Brian Rosko. Appellee's decision to ignore this duty and race to settle with other passengers, thus exhausting the limits of the policy, cannot absolve it of its duties under the policy. Appellee knew or should have known Brian was an insured under the policy well before the settlements were reached and the policy limits completely exhausted.

{¶ 46} Appellee's third contention is that, notwithstanding Brian Rosko's status under appellee's policy, appellee was absolved of any duty to him when a jury resolved that he was not negligent in connection with the accident that caused plaintiffs' injuries. The argument is specious. An insurer's duty to defend is distinct from its duty to indemnify. If the complaint arguably brings the insured's actions under the scope of the policy, then the insurer must defend. *Lusk v. Imperial Cas. & Indemn. Co.* (1992), 78 Ohio App.3d 11, 15, 603 N.E.2d 420. The duty to defend persists regardless of the outcome of the underlying lawsuit. *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 80, 23 OBR 208, 491 N.E.2d 688.

{¶ 47} The insurer's duty to indemnify, by contrast, attaches only where it has been demonstrated that there is, in fact, liability under the policy. *Erie Ins. Exchange v. Colony Dev. Corp.* (June 12, 2001), Franklin App. Nos. 00AP–1334 and 00AP–1335, 2001 WL 641144. Accordingly, although the jury's verdict finding Brian Rosko not liable for the accident of July 6, 1992, obviously would have dispelled appellee's duty to indemnify him for the passengers' damages related to the accident, the verdict did not release appellee from its duty to defend him in the first instance.

{¶ 48} In fact, appellee's obligation to defend Brian Rosko continued notwithstanding R.C. 3937.21, which states:

{¶ 49} "No insurance company issuing a policy of automobile or motor vehicle liability insurance shall be relieved of its contractual obligation to defend its insured against any claim on the basis of coverage for such claim being provided by any other policy, unless the insurer of such other policy has assumed and is performing the obligation to provide such defense."

{¶ 50} In the alternative, appellee insists that under this statute, when Westfield took on Brian Rosko's defense, appellee's duty in that regard was forgiven. Appellee overlooks the fact that R.C. 3937.21 insulates the primary insurer from its duty to defend only where the auxiliary insurer undertakes the defense voluntarily. In the matter before us, it cannot be overstated that Westfield defended Brian Rosko only after appellee abdicated its responsibility to do so. We decline to adopt an interpretation of this provision that would, in essence, reward insurers for disregarding the interests of their insureds.

{¶ 51} The parties do not dispute that Westfield provided excess coverage only under the Rosko family policy. An excess insurer is not generally liable for any part of the loss or damage which is covered by other insurance. *Wurth v. Ideal Mut. Ins. Co.* (1987), 34 Ohio App.3d 325, 329, 518 N.E.2d 607. As the primary insurer, appellee had expressly agreed to pay all defense costs incurred by its insureds in addition to its limit of liability.

{¶ 52} Appellee's reliance on *Phoenix Phase I Assoc. v. Ginsberg, Guren &*
*Merritt* (1985), 27 Ohio App.3d 240, 27 OBR 281, 500 N.E.2d 365, is similarly
misplaced. In *Phoenix,* the primary insurer, who had previously exhausted its
policy limits, sought reimbursement from the excess insurer for costs it incurred
in defending the insured after the excess insurer had declined defense. The
court held that the excess or secondary insurer had a duty to defend the insured
after the primary insurer had exhausted the limits of its policy. The court then
apportioned the costs equally between the insurers. Id. at 242, 27 OBR 281, 500
N.E.2d 365.

{¶ 53} *Phoenix* does not address the circumstances presented in the case at
bar. Unlike appellee, the primary insurer in *Phoenix* acknowledged and fulfilled
its duty to defend the insured. Notwithstanding Westfield's insistence that Brian
was appellee's insured and that, if nothing else, the passenger's allegations placed
Brian Rosko within the terms of appellee's policy, the record demonstrates that
appellee rebuffed any duty with respect to Brian Rosko. Instead, appellee
pursued a strategy that benefited its own financial interests and the interests of
the Napolis at Brian Rosko's expense.

{¶ 54} The record reflects that appellee's adjustor began investigating the
circumstances surrounding the accident immediately. From the beginning, ap-
pellee acted exclusively on behalf of the Napolis. In her letters to the potential
plaintiffs about their claims, the adjustor alerted them to the fact that Brian
Rosko was potentially liable for the accident and that he was covered by other
insurance. Consequently, rather than defending both Brian Rosko and Nicholas
Napoli against the allegations of negligence or attempting to settle the case on
behalf of both boys, appellee aggressively worked to settle claims exclusively on
behalf of Napoli, all the while directing claimants to Brian Rosko and Westfield
as a source of additional coverage. Based on the record, there is no doubt that
appellee's conduct could have proven disastrous for Brian Rosko.

{¶ 55} When Westfield advised appellee that it also had a duty to its other
insured, Brian Rosko, appellee responded that it had reached the $100,000 limits
of its policy with respect to one of the passengers. Subsequently, appellee
deposited the $200,000 balance of its policy limits with the court to settle claims,
not on behalf of Brian Rosko, but for the Napolis. Certainly such conduct
amounts to a breach of Grange's duty with respect to Brian Rosko. Again, we
must note that the record is replete with evidence that appellee knew or should
have known it owed Brian Rosko a duty long before Westfield requested appellee
to undertake that duty.

{¶ 56} Appellee's reliance on *Phoenix* is misplaced in yet another respect. As
noted above, the duty to defend is distinct from the insurer's duty to indemnify.
Appellee has cited no authority for the proposition that the insurer's duty to

defend is necessarily governed by the limits of the policy. The plain language of appellee's policy promises that it will defend liability claims *in addition* to the policy limits. (Grange Auto Ins. Policy, Part A—Liability Coverage, Section A.) As the court in the *Phoenix* case remarked, defense costs are simply not related to policy limits. Id. at 242, 27 OBR 281, 500 N.E.2d 365.

{¶ 57}  There is no dispute here that Westfield was an excess or secondary insurer. Nor is there any doubt that appellee had a duty to defend Brian Rosko and breached that obligation. Under the circumstances, Westfield is entitled to recover the costs it incurred as a result of appellee's breach.

{¶ 58}  Whether or not appellee breached its duty to defend Brian Rosko in bad faith is a separate question. It is well settled that an insurer has a duty to its insured to act in good faith in the handling and payment of an insured's claims. *Dietz–Britton v. Smythe, Cramer Co.* (2000), 139 Ohio App.3d 337, 349, 743 N.E.2d 960. A breach of this duty will give rise to a cause of action in tort against the insurer. Id. at 350–351, 743 N.E.2d 960. A bad-faith claim is separate and distinct from an action claiming a breach of contract. It arises, instead, as a consequence of a breach of a duty established by a *particular* contractual relationships. Id., citing *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 275–276, 6 OBR 337, 452 N.E.2d 1315.

{¶ 59}  An insurer's lack of good faith when processing a claim will create sufficient grounds for a cause of action against the insurer. See, e.g., *Boone v. Vanliner Ins. Co.* (2001), 91 Ohio St.3d 209, 210, 744 N.E.2d 154, fn. 1. A bad-faith action will lie where an insurer refuses to pay a claim without reasonable justification. *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 554, 644 N.E.2d 397 (holding that an insured need not show insurer's actual intent before proving insurer's bad-faith failure to pay a claim). If proven, a bad-faith claim would justify the recovery of more than contractual damages, those that the insured sustained as a consequence of the insurer's bad faith over and above the ones covered by and insurance contract. *LeForge v. Nationwide Mut. Fire Ins. Co.* (1992), 82 Ohio App.3d 692, 700, 612 N.E.2d 1318.

{¶ 60}  The trial court in the present case did not address appellants' bad-faith claim because it resolved the matter erroneously in appellee's favor in summary judgment. Given the significant factual dispute surrounding this issue, the record as it now stands is inadequate for this court to ascertain whether appellee acted in bad faith when it breached its duty to defend Brian Rosko. Accordingly, this matter must be remanded to the trial court for proceedings on Appellants' bad-faith claim.

{¶ 61}  In light of the foregoing, this court concludes that appellants' assignments of error are meritorious. The trial court judgment is reversed. Judgment

is granted to appellant on assignment number one as to appellee's duty to defend Brian Rosko as an insured. There remain questions of fact as to the damages appellant should be awarded for breach of this duty and as to the bad-faith claims. This matter is therefore remanded to the trial court for further proceedings according to law and consistent with this court's opinion.

Judgment reversed
and cause remanded.

VUKOVICH, P.J., and GENE DONOFRIO, J., concur.