OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendants-Appellants, Rondus and Donna Barnett, appeal the decision of the Noble County Court of Common Pleas which granted summary judgment in favor of Plaintiff-Appellee, Westfield Insurance Company. The issues before this court are whether the trial court correctly concluded that Westfield has no duty to defend the Barnetts against a lawsuit claiming they intentionally assaulted someone and whether the trial court should have dismissed the Barnetts' claim of bad faith against Westfield.
 {¶ 2} Ohio courts have held that when someone has been convicted of a criminal offense involving the elements of purposefulness or recklessness, then an insurer has no duty to defend that person from a civil suit arising from acts which constituted the criminal offense under an intentional acts exclusion provision. In this case, the Barnetts were each convicted of assault which includes the elements of either knowledge or recklessness and the underlying suit arises from the same acts which constituted the criminal offense and their policy with Westfield contains an intentional acts exclusion provision. Accordingly, Westfield has no duty to defend the Barnetts in the underlying lawsuit. Because they have no duty to defend, whether it acted in good or bad faith in reaching that conclusion is irrelevant. For these reasons, the trial court's judgment is affirmed.
 Facts and Standard of Review {¶ 3} On March 18, 2001, the Barnetts invited several people over to their house for a cookout which started at about 10:00 a.m. Donna's brother, Mark Reiter, and his girlfriend, Julie Morrison, were guests at the cookout and Reiter drank a few beers during the day. Reiter and Morrison left the Barnetts' home sometime after 7:00 p.m. Reiter was driving the couple home in his truck when he was stopped by Caldwell Police Officer Ralph Cobb. Cobb confirmed that Reiter's license was suspended indefinitely and had him perform field sobriety tests. Cobb also informed Morrison she could walk home. Cobb subsequently arrested Reiter for driving under the influence, driving with a suspended license, and for failing to produce proof of insurance. Since the truck appeared to be uninsured, Cobb made an inventory of Reiter's truck while he waited for a tow truck to remove the vehicle.
 {¶ 4} Morrison and Reiter lived a couple of blocks away from where Cobb stopped them and when Morrison got home she called the Barnetts to tell them that Reiter had been arrested. The Barnetts immediately left their home and drove to the scene. When they arrived on the scene, an altercation occurred. As a result of this altercation, both Rondus and Donna were tried and found guilty of assault on a police officer, obstructing official business, and resisting arrest.
 {¶ 5} After their conviction, Cobb and his wife filed a complaint against the Barnetts for their "intentional and willful assault" on Cobb. The complaint alleged the Barnetts acted recklessly, intentionally, willfully, wantonly, and with malice. As a result of the suit, the Barnetts submitted a claim to their homeowner's insurance carrier, Westfield Insurance Company. In a response, Westfield agreed to defend them pursuant to a reservation of rights.
 {¶ 6} Subsequently, Westfield filed a complaint for declaratory judgment against the Barnetts and the Cobbs which sought a declaration that it had no duty to defend the Cobbs' lawsuit against the Barnetts. The Barnetts answered and asserted counterclaims against Westfield for declaratory judgment, bad faith, and breach of contract.
 {¶ 7} After discovery, Westfield moved for summary judgment, claiming that the altercation between Cobb and the Barnetts was not an "occurrence" as defined by the policy, so their actions were not covered by the policy. It also argued that the Barnetts' actions were intentional, so they could not claim coverage under the policy. The Barnetts responded, claiming the altercation was an occurrence under the policy since the event was "unforeseen, unexpected, unusual, extraordinary, or phenomenal." In addition, they argue that their claims do not fall under the intentional acts exclusion since Westfield cannot show that the Barnetts expected or intended the injuries that Cobb suffered. The trial court granted Westfield's motion for summary judgment
 {¶ 8} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in a de novo review. Parenti v. GoodyearTire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390. A fact is material when it affects the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999), 135 Ohio App.3d 301,304.
 {¶ 9} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,296. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 Duty to Defend {¶ 10} In their first assignment of error, the Barnetts allege:
 {¶ 11} "The trial court erred by granting summary judgment in favor of Appellee and by overruling Appellants' motion for partial summary judgment."
 {¶ 12} The Barnetts argue that the Cobbs' complaint contains claims which arguably or potentially fall within the scope of the policy's coverage. Accordingly, the Barnetts contend that Westfield has the duty to defend them from the Cobb's suit. In response, Westfield argues it does not have the duty to defend since the Barnetts' actions would not constitute an "occurrence" under the policy and since the Cobbs' complaint only alleges claims for intentional torts and the policy does not cover injuries intended by the insureds.
 {¶ 13} The parties agree that an insurer's duty to defend is separate and distinct from its duty to indemnify and that the duty to defend is broader than the duty to indemnify. Socony-Vacuum Oil Co. V.Continental Cas. Co. (1945), 144 Ohio St. 382, paragraph one of the syllabus; Erie Ins. Exchange v. Colony Dev. Corp. (1999),136 Ohio App.3d 406, 412; Red Head Brass, Inc. v. Buckeye Union Ins. Co.
(1999), 135 Ohio App.3d 616, 625. "As long as the complaint contains some claim which is arguably within the scope of the policy coverage, the insurer is obliged to defend the insured." Red Head Brass at 625, citingSanderson v. Ohio Edison Co. (1994), 69 Ohio St.3d 582, paragraph one of the syllabus. Once it is determined there is no possibility of coverage under the policy based on the allegations in the complaint, an insurer no longer has the duty to defend the insured. Wedge Products, Inc. v.Hartford Equity Sales Co. (1987), 31 Ohio St.3d 65, 67-68.
 {¶ 14} The Barnetts contend that the incident was an accident because it was "unforeseen, unexpected, unusual, extraordinary, or phenomenal." They then claim that their claim does not fall under the intentional acts exclusion since Westfield cannot prove they expected or intended the injury they inflicted. In making this argument, the Barnetts do not ignore the fact that they have been convicted of assaulting Cobb. Instead, they use this fact to plead for coverage, arguing they "have paid their debt to society, at the cost of their pride and personal health." What they do ignore is the effect their criminal conviction has on their ability to argue that they did not intentionally cause bodily harm to Cobb.
 {¶ 15} The Barnetts' insurance policy with Westfield provides coverage if a claim or suit for damages because of bodily injury or property damage is caused by an occurrence. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results, during the policy period, in [bodily injury or property damage]." Coverage is specifically excluded to injuries "expected or intended by the insured."
 {¶ 16} All Ohio courts which have specifically addressed the issue have held that a criminal conviction, in and of itself, can establish intent for the purposes of applying an intentional-acts exclusion when the insurance company moves for summary judgment on that issue. SeeAllstate Ins. Co. v. Cole (1998), 129 Ohio App.3d 334; Nearor v. Davis
(1997), 118 Ohio App.3d 806; Baker v. White, 12th Dist. No. 2002-08-065, 2003-Ohio-1614; Adkins v. Ferguson, 5th Dist. No. 02 CA 34, 2003-Ohio-403; Lingo v. State Farm Fire Cas. Co. (Dec. 5, 1996), 8th Dist. Nos. 69514, 70753. This applies even when the insured has been convicted of an offense involving the element of recklessness. Cole at 336; Steinke v. Allstate Ins. Co. (1993), 86 Ohio App.3d 798, 803-804. In each of these cases, the insurer argued on summary judgment that it had no duty to defend the insured since the insured had been convicted of a criminal act which included intent as an element of the offense and that criminal act gave rise to the underlying civil suit. In each of these cases, the trial court granted summary judgment to the insurer and that decision was affirmed on appeal.
 {¶ 17} The Ohio Supreme Court held as such in Preferred Risk Ins.Co. v. Gill (1987), 30 Ohio St.3d 108. In Gill, the insured killed a young child and concealed her body in the garage of his home. He then joined in organized searches for the girl and did not reveal her whereabouts until the body was discovered the next day. He was later tried and convicted for the murder of the girl and sentenced to life in prison. Subsequently, the child's parents filed a wrongful death action against Gill. He had a homeowner's policy through Preferred Risk and notified it of the wrongful death claim. The company then filed an action for declaratory judgment and moved for summary judgment, arguing it had no duty to defend or indemnify Gill. The trial court granted that motion and the appellate court affirmed that decision.
 {¶ 18} The Ohio Supreme Court affirmed the court of appeals' decision, finding that Gill's actions were excluded from coverage under the policy's intentional act exclusion provision.
 {¶ 19} "In the instant cause, appellee demonstrated to the trial court that the conduct which was the subject of the wrongful death action was intentional, rather than negligent as alleged in the underlying complaint. This was established beyond dispute through evidence that Gill's action in killing Kerri resulted in his criminal conviction for aggravated murder. An essential element of that crime is that the perpetrator intended to cause the death. See R.C. 2903.01(D). Kerri's death was clearly `expected or intended by the insured' and therefore the policy does not provide coverage for whatever personal liability Gill may have. Since appellee did not agree in the insurance contract to defend Gill against any claim alleging facts within coverage, even if groundless, false or fraudulent, but only against claims "to which this coverage applies," appellee has no duty to defend Gill in the underlying wrongful death claim. It follows that appellee has no obligation to indemnify Gill in the event of an adverse judgment, since the act was indisputably intentional and outside coverage. The trial court correctly granted summary judgment to appellee on the underlying wrongful death claim." Id. at 115.
 {¶ 20} The same held true for the parents' claim in Gill for serious emotional distress.
 {¶ 21} "The behavior of the insured after the murder, even if he were operating under amnesia, had its origin in a clearly intentional course of conduct (i.e., the murder) and is so inextricably entwined in time and purpose with the intentional acts leading to the murder, and the murder itself, that it cannot fairly be said to be within coverage. The parties to the insurance agreement cannot be imagined to have contemplated that such conduct would be subject to coverage. This court is not prepared to impose on this insurer a duty to defend or indemnify against this conduct by this insured which was clearly not meant to be within the scope of agreed coverage." Id.
 {¶ 22} The Ohio Supreme Court reiterated this conclusion inPhysicians Ins. Co. v. Swanson (1991), 58 Ohio St.3d 189, where it described Gill's holding. "[O]ur holding that there was no coverage inGill was premised on the facts that the insured intended to cause the injury of another person, and that this intent was conclusivelyestablished by the insured's plea of guilty to aggravated murder." (Emphasis added) Id. at 191.
 {¶ 23} In this case, the Barnetts were convicted of assault which is defined as knowingly causing or attempting to cause physical harm or recklessly causing serious physical harm to another or to another's unborn. R.C. 2903.13(A), (B). A person acts knowingly when, regardless of his purpose, he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C). Since a conviction involving the element of recklessness is sufficient to trigger an intentional act exclusion, a conviction involving the element of knowingly would too.
 {¶ 24} At oral argument, the Barnetts argue their actions were negligent in spite of their convictions since R.C. 2903.13(A) defines assault as causing or attempting to cause physical harm. They contend that an attempt to cause physical harm would be evidence of negligence while contending that causing physical harm would be evidence of intent. This argument is meritless since causing or attempting to cause physical harm is only assault if it is done knowingly. See R.C. 2903.13(A). Regardless of whether the Barnetts caused or attempted to cause physical harm, they did so with the same intent.
 {¶ 25} In this case, the Barnetts were convicted for assaulting Cobb, an offense that involves the elements of acting either knowingly or recklessly. The Cobbs filed suit against them alleging they intentionally hurt him. Their policy with Westfield excludes coverage for any injury intended or expected by the Barnetts. Since the Cobbs' claims fall outside the coverage of the policy, Westfield has no duty to defend the Barnetts from those claims. The Barnetts' first assignment of error is meritless.
 Bad Faith {¶ 26} In their second assignment of error, the Barnetts allege as follows:
 {¶ 27} "The trial court erred by dismissing the bad faith claim."
 {¶ 28} This assignment of error is based upon the Barnetts' assumption that this court will find merit in their first assignment of error. Since there is none, this court does not need to address the merits of this assignment of error. "A bad-faith action will lie where an insurer refuses to pay a claim without reasonable justification." GrangeMut. Cas. Co. v. Rosko (2001), 146 Ohio App.3d 698, 712. "Where a duty to defend has not been established, it certainly cannot be held that appellee was negligent, breached a contract or acted in bad faith when it refused to defend or provide coverage." Jones v. Cincinnati Ins. Co (June 21, 1999), 7th Dist. No. 96 CA 43. Accordingly, the Barnetts' second assignment of error is meritless.
 {¶ 29} As each of the Barnetts' assignments of error are meritless, the judgment of the trial court is affirmed.
Judgment affirmed.
Waite, P.J., and Vukovich, J., concur.