**MOTORISTS MUTUAL INSURANCE COMPANY, Appellee,**

v.

**NATIONAL DAIRY HERD IMPROVEMENT ASSOCIATION, INC., Appellant.**

[Cite as *Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn., Inc.* (2001), 141 Ohio App.3d 269.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–793.

Decided Feb. 1, 2001.

270

*Day, Ketterer, Raley, Wright & Rybolt, Ltd.,* and *Merle D. Evans, III,* for appellee.

*Shumaker, Loop & Kendrick, LLP, David W. Wicklund* and *Thomas P. Dillon,* for appellant.

---

BOWMAN, Judge.

Defendant-appellant, National Dairy Herd Improvement Association, Inc. ("NDHIA"), appeals from a Franklin County Court of Common Pleas judgment that resolved cross-motions for summary judgment in favor of plaintiff-appellee, Motorists Mutual Insurance Company ("Motorists"). At issue in this case is whether Motorists had a duty to defend NDHIA, its insured, in a lawsuit filed in New York.

NDHIA is a not-for-profit corporation located in Columbus. Established in 1965, one objective of NDHIA is to coordinate the National Cooperative Dairy Herd Improvement Program ("NCDHIP"). The NCDHIP is sponsored by NDHIA in conjunction with the Extension Services of the United States Department of Agriculture. The objective of the NCDHIP is to set quality certification

standards for milk testing and dairy record keeping, and to provide useful and accurate information to dairy farmers and to various governmental entities.

NDHIA serves as the umbrella organization over its affiliates. NDHIA affiliates, comprised of local or regional dairy improvement associations, engage in milk testing and dairy record keeping services at the state or regional level. The data collected by NDHIA affiliates are utilized in a variety of ways. Because they are utilized by the NCDHIP, the data provided by NDHIA affiliates are considered "official" in the industry.

During the period of time at issue, NDHIA had certain criteria that had to be met before a local or regional dairy improvement association could become a NDHIA affiliate. For example, the affiliate had to adhere to the quality certification guidelines imposed by NDHIA, and the local or regional affiliate had to be organized as a nonprofit agricultural cooperative or association.

In the 1980s and early 1990s, approximately forty to forty-eight percent of all dairy farmers in the United States belonged to NDHIA or one of its affiliates. The remaining dairy farmers did not utilize the data-collection services provided by NDHIA and its affiliates. Some of these farmers used for-profit private testers. Agritronics Corporation ("Agritronics") and Farm Dairy Records, Ltd. ("Farm Dairy") were two for-profit private testers. Because they were not organized as nonprofit agricultural cooperatives, Agritronics and Farm Dairy could not become NDHIA affiliates. Because they were not NDHIA affiliates, Agritronics and Farm Dairy's data was not utilized by NCDHIP, so it was not recognized in the industry as "official" data.

On January 19, 1994, Agritronics and Farm Dairy filed a lawsuit (the "*Agritronics* lawsuit") in a New York federal court against several defendants, including NDHIA. In their lawsuit, Agritronics and Farm Dairy (the "*Agritronics* plaintiffs") asserted that NDHIA violated federal and state antitrust laws and interfered with their prospective business advantage. The *Agritronics* plaintiffs alleged that, although their products and services were of equal quality and less expensive than those offered by the NDHIA affiliates, the *Agritronics* plaintiffs were at a competitive disadvantage in the marketplace because they were unable to advertise their milk testing and dairy record keeping services as "official." In its brief to this court, NDHIA characterizes the allegations in the New York lawsuit as follows:

"The factual allegations of the *Agritronics* complaint boiled down to their essence are as follows. Even though plaintiffs [*sic*] dairy recordkeeping and milk testing services were at least equal in quality to those of the DHIA program, defendants, and in the [*sic*] particular NDHIA, prevented the recognition of plaintiffs' records and services as 'official.' * * * As a result, dairy farmers and others with whom plaintiffs potentially could do business regarded plaintiffs'

records and services as inferior to the official records. * * * Defendants conspired to use this inaccurate and unfair perception regarding the quality of plaintiffs' records and services to pressure and encourage dairy farmers, the artificial insemination industry, the dairy breed associations, and the dairy record processing centers not [to] do business with plaintiffs and other non-official testers. * * * As a result, plaintiffs were prevented from competing effectively in the marketplace, and they lost profits. * * *"

At the time that the *Agritronics* lawsuit was filed, NDHIA had an insurance policy issued by Motorists. Motorists denied NDHIA's request for coverage or reimbursement for its legal defense of the *Agritronics* lawsuit. After NDHIA settled the *Agritronics* lawsuit in the spring of 1997, it made another unsuccessful demand upon Motorists for reimbursement of NDHIA's litigation expenses.

On May 4, 1998, Motorists filed the instant declaratory judgment action in the Franklin County Court of Common Pleas. NDHIA responded with a counter-claim for breach of contract and bad faith. The parties agreed to allow the trial court to decide their disputes on the basis of their merit briefs. NDHIA moved for partial summary judgment, and the trial court treated Motorists' merit brief as a cross-motion for summary judgment. The trial court denied NDHIA's motion for partial summary judgment and granted summary judgment in Motor-ists' favor. In its decision, the trial court concluded that, as a matter of law, Motorists had no duty to defend NDHIA in the *Agritronics* lawsuit or to provide indemnity under the policy.

On appeal, NDHIA raises the following assignments of error:

"1. The trial court erred in denying the motion for partial summary judgment of defendant and counterclaim-plaintiff, National Dairy Herd Improvement Asso-ciation ('NDHIA'), and in granting the motion for judgment as a matter of law of plaintiff and counterclaim-defendant, Motorist Mutual Insurance Company ('Mo-torists').

"2. The trial court erred in determining that Motorists did not have the contractual duty and obligation under the Commercial General Liability Policy ('CGL policy') it issued to NDHIA to provide it with a defense in *Agritronics v. NDHIA, et al.,* in view of the factual allegations of the *Agritronics* complaint, and in determining that Motorists, therefore, had no obligation to reimburse NDHIA for its defense and settlement costs in the *Agritronics* litigation.

"3. The trial court erred in failing to recognize that the factual allegations of the complaint in the *Agritronics* case asserted that NDHIA and the other defendants conspired to engage in conduct that at least arguably or potentially would under the Advertising Injury and Personal Injury provision of the Motor-ists policy constitute libel, slander, or disparagement of a person's or organiza-

tion's goods, products or services and, therefore, trigger Motorists' obligation to defend under its CGL policy.

"4. The trial court erred in finding that the factual allegations of the Complaint in the *Agritronics* case do not arguably or potentially allege publication of the alleged libel, slander, or disparagement of goods, products or services by NDHIA or any of its alleged co-conspirators.

"5. The trial court erred in finding that Motorists had no obligation to provide NDHIA with a defense in the *Agritronics* case by reason of the First Publication Exclusion of the Motorists CGL policy, because none of the relevant factual allegations of the *Agritronics* Complaint allege conduct by defendants, including NDHIA, prior to the issuance of the first Motorists CGL policy to NDHIA in 1989.

"6. The trial court erred in finding that Motorists had no obligation to provide NDHIA with a defense in the *Agritronics* case under the CGL policies that it had issued to NDHIA by reason of the First Publication Exclusion of the Motorists CGL policy, because the co-plaintiff in the *Agritronics* case, Farm Dairy Records, Ltd., was not created and organized until 1990, which is after the issuance of the first Motorists CGL policy."

Although Motorists requests that we affirm the trial court's decision, Motorists raises the following assignment of error in its responsive brief on appeal:

"Plaintiff/Appellee Motorists Mutual Insurance Company ('Motorists') agrees with the thorough, comprehensive and well-reasoned opinion of the Trial Court except that the Trial Court erred when it considered the Briefs submitted by the parties to be summary judgment motions rather than Merit Briefs."

As an initial matter, we address Motorists' assignment of error, which challenges the trial court's decision to rule on this case as if it were submitted on cross-motions for summary judgment even though Motorists submitted a merit brief, not a summary judgment motion. Motorists argues that the distinction affects the standard of review. If decided on merit briefs, Motorists argues, then the standard of review would be whether the trial court's findings were erroneous as a matter of law or contrary to the weight of the evidence. See *Midwestern Indemn. Co. v. Video Features, Inc.* (Nov. 2, 1994), Hamilton App. No. C–930401, unreported, 1994 WL 603152. According to Motorists, that standard of review requires us to give more deference to the trial court's decision than we would on an appeal from summary judgment, which we review *de novo*.

We conclude that, in the instant matter, the trial court's decision to rule as if this case were submitted on motions for summary judgment rather than on merit briefs is a procedural distinction without a difference. The trial court expressly noted, and we agree, that there are no genuine disputes of material facts.

Consequently, under either standard of review, we must determine whether the trial court applied the correct legal analysis to an undisputed factual record. Moreover, even when we apply the rigorous standard of review appropriate to appeals of summary judgment, we affirm the judgment of the trial court. Accordingly, we overrule as moot Motorists' assignment of error.

Appellate review of summary judgment motions is *de novo*. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841, 843–844. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383, 384. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343, 345.

We address NDHIA's first four assignments of error together, as NDHIA briefed them together and they all pertain to the trial court's determination that, pursuant to the express terms of the insurance policy, Motorists had no contractual obligation to defend NDHIA in the *Agritronics* litigation.

"[I]nsurance contracts must be construed in accordance with the same rules as other written contracts." *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.* (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102. Words and phrases used in insurance policies " 'must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.' " *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 12, 540 N.E.2d 716, 718 quoting *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167–168, 24 O.O.3d 274, 275–276, 436 N.E.2d 1347, 1348.

Ambiguities in insurance policies should be construed liberally in favor of coverage. *Yeager v. Pacific Mut. Life Ins. Co.* (1956), 166 Ohio St. 71, 1 O.O.2d 204, 139 N.E.2d 48, paragraph one of the syllabus. There is a difference between the duty to defend and the duty to indemnify. "Even though the underlying action eventually produces a result which does not trigger a duty to indemnify under the policy, this fact is not determinative of whether the insurer had a duty to defend the action." *Mains v. State Auto. Mut. Ins. Co.* (1997), 120 Ohio App.3d 534, 538, 698 N.E.2d 488, 491. "An insurance policy which states

that the insurer is obligated to defend in any action seeking damages payable under the policy against the insured, * * * imposes an absolute duty upon the insurer to assume the defense of the action where the complaint states a claim which is partially or arguably within policy coverage." *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, paragraph one of the syllabus.

At issue in NDHIA's first four assignments of error is whether Motorists had a duty to defend under Coverage B of the Commercial General Liability Coverage Form. Coverage B, entitled "Personal and Advertising Injury Liability," provides as follows:

"1.   Insuring Agreement.

"a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this Coverage Form applies.   We will have the right and duty to defend any 'suit' seeking those damages. * * *

"* * *

"b.   This insurance applies to:

"(1) 'Personal injury' caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

"(2) 'Advertising injury' caused by an offense committed in the course of advertising your goods, products or services;

"but only if the offense was committed in the 'coverage territory' during the policy period.   [Commercial General Liability Coverage Form, Section I.]"

"Personal injury" is defined in the Commercial General Liability Coverage Form as follows:

"10.   'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:

"* * *

"d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services * * *[.]"

"Advertising injury" is defined as:

"1.   'Advertising injury' means injury arising out of one or more of the following offenses:

"a.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]   [Commercial General Liability Coverage Form, Section V.]"

NDHIA argues that Motorists had a duty to defend NDHIA because the complaint arguably states a claim that NDHIA slandered, libeled, or disparaged the *Agritronics* plaintiffs.

■ After careful review of the *Agritronics* complaint, we conclude that Motorists had no duty to defend NDHIA because the allegations in the *Agritronics* complaint did not state a claim that could even arguably fall within the policy coverage. The complaint clearly states causes of action for antitrust and monopoly, not for defamation or disparagement. In the very first statement in their complaint, the *Agritronics* plaintiffs summarize the focus of their lawsuit as follows: "Plaintiffs bring this action for treble damages and injunctive relief under the Antitrust Laws of the United States and of the State of New York." *Agritronics* complaint at paragraph one.

■ Nor do the allegations in the *Agritronics* complaint potentially or arguably state a claim for defamation or disparagement. To state a claim for defamation under New York law, the substantive law that would govern the matters in the *Agritronics* lawsuit, a plaintiff must allege the following elements: (1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) the publication of the statements to a third party; and (4) injury to the plaintiff. *Hayes v. Sweeney* (W.D.N.Y.1997), 961 F.Supp. 467, 479. To state a claim for disparagement under New York law, a plaintiff must allege the following: (1) false statements, (2) published to a third party, (3) malice, and (4) special damages. *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.* (S.D.N.Y. 1999), 75 F.Supp.2d 235, 239. The *Agritronics* complaint, a detailed document containing more than eighty paragraphs of allegations, does not contain a single allegation that NDHIA published a false statement about the *Agritronics* plaintiffs to a third party.

NDHIA encourages us to *imply* claims for defamation or disparagement, arguing that "[t]he factual allegations of the *Agritronics* complaint only makes sense as a charge that defendants prevented plaintiff from effectively competing with them by disparaging their product and services to customers and potential customers." We disagree. Customers may have had a variety of reasons to utilize NDHIA's "official" records; their choice to use NDHIA records does not necessarily imply that NDHIA engaged in defamation or disparagement. In fact, the *Agritronics* plaintiffs advance specific reasons that customers opted to use "official" records, noting that "many dairy competitions do not accept contestants who are not part of the 'official' DHIA program," and "members of the artificial insemination industry either refuse to deal with dairy farmers whose herds are not on the 'official' program, or adopt differential pricing structures that give preference to 'official' over non-official herds." *Agritronics* complaint at paragraphs 28, 29. Nowhere in their complaint do the *Agritronics* plaintiffs allege

that NDHIA published specific false statements about the *Agritronics* plaintiffs to foster these perceptions in the dairy community.

NDHIA contends that evidence developed during the course of discovery in the *Agritronics* litigation demonstrates that the claims in that lawsuit fell within the policy coverage. Specifically, NDHIA cites the affidavit of Frank Cowan, President of Agritronics Corporation and Farm Dairy Records, Ltd. In his affidavit, Cowan testified that dairy farmers were encouraged to use only official DHIA testing, that the artificial insemination industry refused to sell reproductive products to dairy farmers whose cows were not subject to official DHIA tests and that many prestigious dairy competitions were only open to cows who were subject to official DHIA tests. NDHIA also cites an excerpt from Cowan's deposition testimony, which we quote in context as follows:

"Q. [Did you ever hear of an instance where a Northeast DHIA tester said] that the cows would draw less money if you didn't use official DHIA testing?

"A. There could have been, but to be honest with you, I probably heard so many comments that I just can't sort them out now.

"Q. When you say you heard so many comments, what other types of comments are you referring to?

"A. Comments about my business.

"Q. That were attributed to the Northeast Dairy Herd Improvement Association?

"A. Well, it would—I believe it would be hearsay.

"Q. I'm asking what you heard.

"A. People would tell me that the DHIA tester or testers said that we would be out of business in a short period of time, our records weren't official, we weren't associated with the National DHIA certification program, et cetera, et cetera."

▮▮▮▮▮ In determining whether a complaint states a claim that is potentially or arguably within policy coverage thereby triggering the insurer's duty to defend, we may consider matters "outside the four corners of the pleadings." *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 180, 9 OBR 463, 465, 459 N.E.2d 555, 558. We will not, however, impose a duty to defend based on allegations outside the complaint, where the complaint does not state a claim that arguably triggers coverage. We agree with the following statement from *Leland Electrosystems, Inc. v. Travelers Ins. Co.* (July 10, 1984), Montgomery App. No. 8580, unreported, 1984 WL 5371:

"* * * [T]he inquiry into the insurers duty to defend must naturally begin with a close scrutinization of the allegations of the disputed complaint. If such a review reveals claims which 'potentially' or 'arguably' fall within the purview of the policy, then, and only then, does Willoughby Hills dictate that a court look to extraneous matters to determine whether a defense is required of the insurer. On the other hand where a court reviews a complaint and concludes beyond a doubt that there are not arguably covered claims encompassed therein it need not stretch the allegations beyond reason to impose a duty on the insurer. To do so would effectively impose an absolute duty on the insurer to provide a defense to the insured regardless of the cause of action stated in the complaint. Even under the liberal notions of notice pleading it would be inherently unfair to require the insurer to provide a defense where the pleadings failed to notify, even arguably, that the insured is being sued on a claim covered by the policy."

Because we have determined that the allegations in the *Agritronics* complaint do not state a claim that potentially or arguably falls within the purview of the insurance policy, we need not look at extraneous matter developed during the course of discovery.

Even were we to supplement the *Agritronics* complaint with all the additional testimony advanced by NDHIA, however, we still conclude that, as a matter of law, the allegations did not state a claim for defamation or disparagement. In his affidavit, Cowan never alleged that NDHIA made any false or disparaging statements. Similarly, although Cowan made vague reference to comments by Northeast DHIA testers, his deposition testimony does not identify specific false statements of fact published by NDHIA to a third party. In fact, the alleged hearsay statements that the *Agritronics* plaintiffs' records were not "official" and that the *Agritronics* plaintiffs were not associated with NDHIA appear to be true observations, the very impetus for the *Agritronics* plaintiffs' claims for violations of antitrust and monopoly laws. Finally, we note that, even in the wake of discovery, the *Agritronics* plaintiffs never amended their complaint to include causes of action for defamation or disparagement, bolstering our conclusion that the *Agritronics* plaintiffs brought their lawsuit to challenge the nature of the NDHIA's policy of excluding for-profit entities from "official" data collection, not to avenge defamatory or disparaging statements by NDHIA. We, therefore, overrule NDHIA's first, second, third, and fourth assignments of error.

By its fifth and sixth assignments of error, NDHIA argues that the trial court erred in determining that Motorists had no obligation to provide NDHIA with a defense on the basis of the first publication exclusion of the policy. The policy at issue expressly excludes from coverage all personal injury or advertising injury "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period[.]" We have already

concluded that NDHIA was not entitled to coverage for a personal injury or an advertising injury, rendering NDHIA's fifth and sixth assignments of error moot.

For the foregoing reasons, NDHIA's first, second, third and fourth assignments of error are overruled, and NDHIA's fifth and sixth assignments of error and Motorists' assignment of error are overruled as moot. The judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PEGGY BRYANT, P.J., and DESHLER, J., concur.