OPINION
{¶ 1} Defendant-appellant, Hartford Casualty Company ("Hartford") appeals, and plaintiff-appellee, Hahn's Electric Company ("HEC") cross-appeals, from a Franklin County Court of Common Pleas judgment granting in part the parties' cross-motions for summary judgment on HEC's claim for coverage under a Hartford business liability insurance policy issued to HEC. At issue is whether Hartford had a duty under the policy to defend HEC against a homeowner's claims that (1) HEC's electrical workmanship was incomplete and/or faulty, and (2) a mechanic's lien HEC filed against the homeowner's property had defamed the title to the real estate.
{¶ 2} On March 23, 2000, HEC filed a complaint for foreclosure and unjust enrichment against defendant Eleanor Cochran, alleging Cochran owed HEC $9,500 for electrical work HEC performed at Cochran's home. As a result of Cochran's refusal to pay, HEC also filed a mechanic's lien on Cochran's home. On May 18, 2000, Cochran filed an answer and counterclaim alleging she and HEC had verbally agreed the electrical work would be performed at her property for a total cost of $2,000. Cochran presented three counts in the counterclaim, alleging: (1) HEC breached the contract because the electrical work was incomplete and not performed in a good, workmanlike manner; (2) HEC negligently performed the electrical work; and (3) the mechanic's lien HEC filed against Cochran's property had defamed the title to the real estate.
{¶ 3} In response to Cochran's counterclaim, HEC turned to Hartford, seeking that Hartford provide a defense for, and indemnify, HEC against Cochran's counterclaims. In a detailed letter to HEC on October 4, 2000, Hartford advised HEC of its conclusion that its policy to HEC did not provide coverage for Cochran's allegations against HEC.
{¶ 4} On December 5, 2000, HEC filed an amended complaint adding Hartford as a defendant and asserting three claims against Hartford: (1) declaratory judgment that the Hartford insurance policy issued to HEC provides coverage to HEC for Cochran's counterclaims; (2) Hartford's breach of its contract with HEC in its failure to defend or indemnify HEC against Cochran's counterclaims; and (3) Hartford's bad faith denial of its duties under the insurance policy by its refusal to defend or indemnify HEC. Both parties moved for summary judgment on HEC's claims against Hartford. On July 10, 2001, the trial court stayed HEC's bad faith claim, as well as discovery on the claim, pending the court's determining the issue of coverage under the Hartford policy.
{¶ 5} In a decision issued on October 9, 2001, the trial court granted, in part, summary judgment to both parties. Specifically, the trial court found the allegations in Cochran's breach of contract and negligence counterclaims, Counts I and II respectively, fall within the policy's general liability coverage for "property damage" caused by an "occurrence." The trial court further found, however, that because the only damages alleged are to HEC's own electrical work, the damages are excluded from coverage, and Hartford is relieved of its duty to defend or indemnify HEC against the allegations. To that extent, the trial court granted summary judgment to Hartford.
{¶ 6} In contrast, the trial court concluded Cochran's allegations of defamation or slander of title to real estate, Count III of the counterclaim, fall within the scope of coverage for "personal injury" as defined in the Hartford policy, thus obligating Hartford to defend against those allegations. As a result, the trial court also concluded Hartford breached its contract with HEC by refusing to defend against the slander allegations. Lastly, the court determined that, although Hartford's refusal to defend or indemnify HEC against the slander of title to real estate counterclaim was erroneous, the refusal was not unreasonable, and thus not done in bad faith. The trial court journalized its decision in a November 6, 2001 entry, included language in the judgment entry pursuant to Civ.R. 54(B), and properly determined it to be a final appealable order pursuant to R.C. 2505.02.
{¶ 7} Hartford appeals, assigning the following errors:
{¶ 8} "I. THE TRIAL COURT ERRED IN GRANTING HAHN'S ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT FOUR OF ITS AMENDED COMPLAINT AND DENYING HARTFORD CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT FOUR OF THE AMENDED COMPLAINT.
{¶ 9} "II. THE TRIAL COURT ERRED IN GRANTING HAHN'S ELECTRIC COMPANY'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT V OF ITS AMENDED COMPLAINT AND DENYING HARTFORD CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT IV OF THE AMENDED COMPLAINT."
{¶ 10} HEC cross-appeals, assigning the following errors:
{¶ 11} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT APPELLEE HARTFORD INSURANCE HAD NO DUTY TO DEFEND HAHN'S ELECTRIC CO. AGAINST COUNTS ONE AND TWO OF DEFENDANT COCHRAN'S COUNTERCLAIM, AS HAHN HAD ADDITIONAL COMPLETED OPERATIONS INSURANCE COVERAGE, OVER AND ABOVE THEIR GENERAL LIABILITY COVERAGE WHICH OBLIGATED HARTFORD TO DEFEND HAHN IN THIS CASE.
{¶ 12} "II. THE TRIAL COURT ERRED IN FINDING AS A MATTER OF LAW THAT APPELLEE HARTFORD INSURANCE HAD NO DUTY TO DEFEND HAHN'S ELECTRIC CO. AS TO COUNTS ONE AND TWO OF DEFENDANT COCHRAN'S COUNTERCLAIM, AS THESE COUNTS ARGUABLY SOUGHT PHYSICAL DAMAGES COLLATERAL TO HAHN'S WORK.
{¶ 13} "III. THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT TO HARTFORD INSURANCE, BY NOT CONSTRUING AMBIGUITIES IN THE POLICY OF INSURANCE IN FAVOR OF HAHN.
{¶ 14} "IV. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEE HARTFORD INSURANCE'S MOTION FOR SUMMARY JUDGMENT AS TO HAHN'S ELECTRIC CO.'S CLAIM FOR BAD FAITH, AS THE ISSUE OF BAD FAITH IS A JURY QUESTION.
{¶ 15} "V. THE TRIAL COURT ERRED IN STAYING DISCOVERY AND NOT ALLOWING HAHN TO CONDUCT DISCOVERY AS TO HARTFORD'S BAD FAITH."
{¶ 16} In reviewing the trial court's ruling on summary judgment, we conduct an independent review of the record and stand in the shoes of the trial court. Motorists Mut. Ins. Co. v. Natl. Dairy Herd Improvement Assn. (2001), 141 Ohio App.3d 269, 275. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
{¶ 17} In its first assignment of error, Hartford asserts the trial court erred in finding Cochran's counterclaim for defamation or slander of title to real estate is covered by the Hartford policy. More particularly, Hartford contends the trial court erred in concluding HEC committed a "personal injury" as defined in Hartford policy Definitions G.14.d when HEC placed a mechanic's lien against the real estate Cochran owned. Hartford urges this court to follow other jurisdictions that have considered this issue and have held a slander of title to real estate claim does not fall within the scope of the coverage for personal injury provided by Hartford's policy.
{¶ 18} In response, HEC contends neither the law in Ohio nor the Hartford policy distinguish between slander against a person and slander of title to real estate. HEC asserts "a slander is a slander," and because Hartford did not specifically exclude slander of title to real estate from the policy's personal injury coverage for slander, it is deemed to be included within that coverage. HEC further asserts that if the mechanic's lien was wrongfully filed, it not only slanders Cochran's title to her real estate but, also, personally slanders Cochran by falsely asserting Cochran owed HEC a debt, thereby triggering personal injury coverage.
{¶ 19} "The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured." Motorists Mut. v. Trainor (1973), 33 Ohio St.2d 41, paragraph two of the syllabus.
{¶ 20} However, a liability insurer need not provide a defense for its insured if there is no set of facts alleged in the underlying complaint against the insured that, if proven true, would invoke coverage. Cincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604,605. We will "`not stretch the allegations beyond reason to impose a duty on the insurer.'" Natl. Dairy Herd at 279, quoting Leland Electrosystems, Inc. v. Travelers Ins. Co. (July 10, 1984), Montgomery App. No. 8580. Nor will we impose a duty to defend based on allegations outside the complaint, where the allegations in the complaint are not vague or ambiguous and do not state a claim potentially or arguably within policy coverage. Natl. Dairy Herd at 278; Monsler v. Cincinnati Cas. Co. (1991), 74 Ohio App.3d 321, 326. Only when a review of the allegations of the complaint reveals claims that potentially or arguably fall within the purview of the policy does a court then look to extraneous matters to determine whether a defense is required of the insurer. Natl. Dairy Herd, supra. Thus, the relevant inquiry here is whether the allegations of Cochran's counterclaim against HEC state a claim potentially or arguably within the policy coverage, thereby requiring Hartford to defend HEC in the underlying action. Cincinnati Indemn. Co. at 605; Natl. Dairy Herd at 278.
{¶ 21} Hartford agrees in its policy to defend and indemnify HEC for damages resulting from "personal injury" "to which this insurance applies," and does not agree to defend or indemnify those "to which this insurance does not apply." An insurance contract is construed in accordance with the same rules as other written contracts. Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992), 64 Ohio St.3d 657, 665; Natl. Dairy Herd, supra. Ambiguities in insurance policies are to be construed liberally in favor of coverage. Id. However, when the language in an insurance policy is clear and unambiguous, the words are given their plain and ordinary meaning and the contract is enforced as written. Hybud, supra.
{¶ 22} Here, the Hartford policy expressly states it applies to personal injury caused by an "offense" arising out of the insured's business, including the "offense" of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." (Definitions G.14.d.) Because the definition is unambiguous, it must be construed according to the plain and ordinary meaning of the words, Hybud, supra, and applied to the allegations of Cochran's counterclaim.
{¶ 23} In her counterclaim for slander of title, Cochran alleged, "[b]y recording a mechanic's lien and filing this action, Plaintiff has defamed the title to the real estate belonging to Defendant Cochran [and] [a]s a result of Plaintiff's wrongful actions, Defendant Cochran has suffered damages in an amount to be proven at trial." (Cochran counterclaim, ¶ 8 and 9.)
{¶ 24} Ohio authorities recognize slander of title to real estate as a distinct tort from slander of a person. Slander of title to real estate is a tort action against one who falsely and maliciously defames title to property and causes some special pecuniary damages or loss. Green v. Lemarr (2000), 139 Ohio App.3d 414, 430; Consun Food Ind., Inc. v. Fowkes (1991), 81 Ohio App.3d 63, 72; Childers v. Commerce Mtge. Invest. (1989), 63 Ohio App.3d 389, 392. Generally, slander of title to real estate involves the wrongful recording of an unfounded claim, such as a mechanic's lien, to the property of another. Green at 433.
{¶ 25} In contrast, slander of a person injures a person's reputation and good name, exposing the person to public hatred, contempt, ridicule, shame or disgrace. Dale v. Ohio Civil Service Employees Assn. (1991), 57 Ohio St.3d 112, 116, certiorari denied sub nom, Dale v. AFL-CIO (1991), 501 U.S. 1231, 111 S.Ct. 2853; Morrison v. Gugle (2001), 142 Ohio App.3d 244, 258; Sweitzer v. Outlet Communications, Inc. (1999), 133 Ohio App.3d 102, 108; Talley v. WHIO TV-7 (1998), 131 Ohio App.3d 164, 169. Thus, the gravamen of a claim of slander of title to real estate is protection of economic interests in property, whereas the essence of a claim of slander of a person is personal in nature, involving protection of a person's interest in his or her reputation. See Restatement of the Law 2d, Torts (1977), 340-341, Section 623A, Comment g, 343 Section 624, Comment a.
{¶ 26} The allegations in Cochran's counterclaim present, and are limited to, a claim of slander of title to real estate. Contrary to HEC's contention, Cochran does not allege she, or her reputation or good name, were slandered by HEC's filing the mechanic's lien. Accordingly, our analysis is limited to whether Hartford had a duty to defend and indemnify against a claim of slander of title to real estate.
{¶ 27} Under the policy's definition, the slander must be of a "person," "organization," "good," "product," or "service." (Definitions G.14.d.) Title to real estate refers to the union of the elements of legal ownership of real property. See Black's Law Dictionary (4 Ed.Rev. 1999). Because title to real estate is not a person, organization, good, product, or service as those terms are commonly understood, slander of title of real estate does not fall within the personal injury coverage provided by the policy. Indeed, the five categories of "personal injury" defined in the policy all vindicate personal interests, rather than the economic interest in property vindicated in a slander of title action. Specifically, apart from slander or disparagement, the four other classifications of personal injury within the policy include: (1) false arrest, detention or imprisonment; (2) malicious prosecution; (3) wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy; and (4) oral or written publication of material that violates a person's rights of privacy. (Definitions G.14.)
{¶ 28} Further, other courts have addressed this issue and have concluded that policies containing identical, and even broader, definitions of slander-based "personal injury" do not provide coverage for slander of title claims. See Bank One, Milwaukee, N.A. v. Breakers Dev., Inc. (Wis.App. 1997), 208 Wis.2d 230, 559 N.W.2d 911, 912; Truck Ins. Exchange v. Bennett (1997), 53 Cal.App.4th 75, 61 Cal.Rptr.2d 497; Kickham Group, Inc. v. American Natl. Fire Ins. Co. (N.D.Tex., Sept. 24, 1997), Civ.A. 3:96-CV-1823-D, appeal dismissed (C.A.5, 1999), 174 F.3d 198; Doyle v. Engelke (Wis., June 24, 1998), 219 Wis.2d 277, 580 N.W.2d 245; U.S.F.G. v. Saddle Ridge, L.L.C. (D.Kan., Sept. 27, 1999), Civ. No. 98-2565-KHV. Indeed, HEC fails to point to, and we are not aware of, any authority that includes slander of title to real estate within coverage for personal injury in a business liability policy.
{¶ 29} Contrary to HEC's assertions, the fact that slander of title to real estate is not specifically excluded from coverage under the Hartford policy does not bring the claim within the purview of the policy if coverage is not initially established. Cincinnati Indemn. Co.; Natl. Dairy Herd at 278. Both Andersen v. Highland House Co. (2001),93 Ohio St.3d 547 and Home Indemn. Co. of N.Y. v. Village of Plymouth (1945), 146 Ohio St. 96, relied on by HEC for its contention that coverage must be provided if not specifically excluded, are distinguishable. In Anderson and Home Indemn. Co., the insureds' claims fell, or arguably fell, within the coverage of the policies; the determinative issue was whether exceptions in the policies excluded coverage of the claims. Here, the critical question is whether the slander of title claim initially falls within the coverage of the Hartford policy. Only if that question is answered affirmatively, and here it is not, do the exceptions in the policy become relevant.
{¶ 30} Because Cochran's allegations of slander of title to real estate do not potentially or arguably fall within coverage of HEC's business liability policy, Hartford has no duty to defend or indemnify HEC against the slander counterclaim. Accordingly, Hartford's first assignment of error is sustained.
{¶ 31} Hartford's second assignment of error asserts that where its policy provides no coverage for Cochran's allegations concerning slander of title to real estate, Hartford has no duty to defend or indemnify HEC against the counterclaim, and thus did not breach its contract with HEC in that regard. Hartford contends the trial court's contrary conclusion must be reversed.
{¶ 32} An insurer's failure to honor its duty to defend constitutes a material breach of contract. Sanderson v. Ohio Edison Co. (1994), 69 Ohio St.3d 582, 586. Because, however, Cochran's slander of title to real estate counterclaim does not potentially or arguably fall within the scope of coverage provided by the Hartford policy, Hartford does not have a duty under the insurance contract to defend or indemnify HEC against the claim. Accordingly, Hartford did not breach its contract in refusing to so defend or indemnify. Id. Hartford's second assignment of error is sustained.
{¶ 33} HEC's first three cross-assignments of error are interrelated and will be addressed jointly. Together they assert the trial court erred in finding Hartford has no duty to defend HEC against the remaining two counts of Cochran's counterclaim, those asserting breach of contract and negligent work performance. Specifically, the breach of contract counterclaim, Count I, alleges that HEC "failed to provide said work in a good workmanlike fashion [and] [t]he work that Plaintiff did provide does not pass building code requirements, is incomplete and needs to be completed or redone." Cochran alleges that as a result of HEC's breach of the parties' agreement, Cochran has been damaged in an amount not less than $10,000. The negligent work performance counterclaim, Count II, alleges that HEC "was negligent in performing the electrical work on behalf of Defendant Cochran [and] [a]s a result of Plaintiff's negligence, Defendant Cochran has suffered damages which will be proven at trial, but in an amount not less than $10,000."
{¶ 34} HEC first asserts that in finding Hartford has no duty under the policy to defend and indemnify HEC on the above counterclaims, the trial court erroneously failed to consider the "products completed operations ["PCO"] coverage" HEC purchased in addition to the general liability coverage of the Hartford policy.
{¶ 35} Both the general liability coverage and the PCO coverage are part of the business liability coverage provided in the Hartford policy for property damage liability. Typically, general liability insurance coverage insures against liability for risks of property damage during the time the insured is performing its work on another's premises, and PCO hazard coverage insures against liability for risks of property damage that occur after the insured's work is completed on another's premises. Cole v. Am. Ind. Resources Corp. (1998),128 Ohio App.3d 546, 552; Panzica Constr. Co. v. Ohio Cas. Ins. Co. (May 16, 1996), Cuyahoga App. No. 69444. Here, the Hartford policy's PCO coverage protects HEC as the insured against liability for property damages arising out of HEC's product or work except for products that are still in the physical possession of HEC or for work that has not yet been completed or abandoned by HEC. (Definitions G.15.a.) Pursuant to the Hartford policy, HEC's product and work include warranties or representations HEC made concerning the fitness and quality of its materials and work. (Definitions G.19 and 20.)
{¶ 36} The PCO provision in the Hartford policy is inapplicable here because Cochran's counterclaim expressly alleges HEC's electrical work "is incomplete and needs to be completed." Although HEC asserts there is no evidence that Cochran has not put the electrical work to its intended use, the duty to defend is determined by the scope of the allegations in the counterclaim. Motorists Mut., supra. Thus, we limit our review to the general liability provisions of the insurance contract, initially to determine if the allegations in Counts I and II of the counterclaim fall within any coverage provisions, and then to determine if any exclusions apply.
{¶ 37} Arguably, Cochran's allegations fall within the Hartford policy's coverage for property damage caused by an occurrence because the allegations concern a contractor's negligent performance of its work and a breach of its duty to perform in a workmanlike manner. See Zanco, Inc. v. Michigan Mut. Ins. Co. (1984), 11 Ohio St.3d 114; Erie Ins. Exchange v. Colony Dev. Corp. (1999), 136 Ohio App.3d 406, 414-415 (holding that such allegations arguably or reasonably fall within general liability coverage for property damage caused by an occurrence).
{¶ 38} However, even if the allegations in Counts I and II of the counterclaim initially fall within the coverage provisions of the Hartford policy, their claims are otherwise excluded from coverage by operation of various exclusions in the policy (attached as Appendix A) that exclude coverage for damages relating solely to a contractor's own work. Ohio courts have found that such standard exclusions in a business liability policy ensure that "[d]amage resulting from a contractor's own work usually is excluded as liability insurance should not be a warranty or performance bond for general contractors." Panzica Constr., supra; Erie Ins. Exchange at 415-416. The exclusions generally operate to exclude coverage for damage to the work of the insured, but generally do not exclude coverage for collateral damage to other property. Id. "This is to discourage careless work by making general contractors pay for any losses caused by their own work." Panzica Constr., supra. In accord, Erie Ins. Exchange, supra. Thus, a liability policy does not cover claims for the insured's defective or insufficient work or for the repair or replacement of that work. See Zanco, supra; Erie Ins. Exchange at 414; Westfield Ins. Co. v. Riehle (1996), 113 Ohio App.3d 249, 254-255.
{¶ 39} Here, the damages alleged in Counts I and II of Cochran's counterclaim are limited to the repair, replacement and/or completion of the electrical work performed by HEC. No collateral property damage is alleged. Thus, the stated policy exclusions operate to exclude coverage of the damages alleged by Cochran in Counts I and II. Zanco, supra (holding the insurer had no duty to defend because allegations that the insured breached its duty to perform construction in a workmanlike manner are excluded from coverage under the "work performed" and "product" exclusions); Erie Ins. Exchange at 416 (holding the "work performed" exclusion does not exclude coverage for collateral damage to other property, but does exclude coverage for damage to the work of the insured); Ohio Cas. Ins. Co. v. Joseph Sylvester Constr. Co. (Sept. 30, 1991), Trumbull App. No. 90-T-4439 (finding no coverage because allegations included no claim of collateral damages). Accordingly, Hartford has no duty to defend against the allegations in Counts I and II of the counterclaim. Because Hartford has no duty to defend HEC against any of the allegations in Cochran's counterclaim, HEC's first three cross-assignments of error are overruled.
{¶ 40} In its fourth cross-assignment of error, HEC asserts the trial court erred in granting summary judgment against HEC's claim that Hartford acted in bad faith in refusing to defend or indemnify HEC. In granting summary judgment to Hartford on HEC's claim of bad faith, the trial court found that Hartford provided HEC with detailed reasons for its denial of coverage. Although the trial court determined Hartford erroneously denied coverage to HEC on Cochran's slander of title claim, the court also concluded Hartford's refusal to provide coverage was not so erroneous as to be unreasonable, and thus was not done in bad faith. HEC contends the trial court erred in granting summary judgment against HEC's claim of bad faith where the trial court found Hartford breached its contractual duty to defend HEC against Cochran's allegations of slander.
{¶ 41} An insurer has a duty to its insured to act in good faith in the handling of an insured's claims. Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, paragraph two of the syllabus. To prevail on a claim for bad faith, an insured must establish that its insurer "[failed] to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, syllabus.
{¶ 42} Given these principles, HEC has not shown that the trial court erred in granting summary judgment to Hartford on HEC's claim of bad faith against Hartford. Hartford refused to defend and indemnify HEC because Cochran's allegations against HEC were not covered under the Hartford liability policy." `Obviously, if a reason for coverage denial is correct, it is per se reasonable.'" Pasco v. State Auto. Mut. Ins. Co. (Dec. 21, 1999), Franklin App. No. 99AP-430, quoting with approval GRE Ins. Group v. Internatl. EPDM Rubber Roofing Systems, Inc. (Apr. 30, 1999), Lucas App. No. L-98-1387. Because we have upheld Hartford's coverage decision, it was per se reasonable and thus not made in bad faith. Id.; Zoppo.
{¶ 43} HEC nonetheless contends its claim of bad faith is established by Hartford's "refusal to properly investigate" whether Hartford had a lawful basis to refuse coverage. HEC urges this court to follow Bullet Trucking, Inc. v. Glenn Falls Ins. Co. (1992),84 Ohio App.3d 327; HEC relies on it for the proposition that an insured need not establish coverage under a policy to maintain a bad faith claim against its insurer for failure to properly investigate whether a lawful basis exists to refuse coverage. This court, however, has declined to follow the pronouncement in Bullet Trucking, finding it to be unpersuasive dicta. Pasco, supra. Consistent with Pasco, we similarly reject the statements in Bullet Trucking HEC relies on to support its position.
{¶ 44} HEC further asserts the trial court had no record basis for concluding that Hartford's actions were reasonable because the trial court precluded discovery on the issue of Hartford's alleged bad faith. To the contrary, Hartford's letter to HEC provided detailed, lawful reasons for denying coverage and provided an ample basis for the trial court to review whether Hartford's denial of coverage was reasonable. See GRE Ins. Group, supra. Moreover, to the extent Hartford may have misquoted policy provisions in its letter to HEC outlining its denial of coverage, HEC has not demonstrated prejudice as the result of the errors. The trial court did not err in granting summary judgment against HEC's bad faith claim, and HEC's fourth cross-assignment of error is overruled.
{¶ 45} Finally, in its fifth cross-assignment of error, HEC asserts the trial court erred in staying discovery on HEC's bad faith claim, and related discovery, pending the trial court's determination of coverage under the Hartford insurance policy.
{¶ 46} Although an insured alleging bad faith denial of insurance coverage is entitled to discover its insurer's claims file materials that both relate to the issue of coverage and were created prior to the insurer's denial of coverage, the trial court may stay the bad faith claim and related production of discovery pending the outcome of the underlying claim. Boone v. Vanliner Ins. Co. (2001), 91 Ohio St.3d 209,213-214. Thus, in accordance with Boone, the trial court acted within its authority in staying HEC's bad faith claim and related discovery requests until the court decided the issue of coverage under the Hartford insurance policy. HEC's fifth cross-assignment of error is overruled.
{¶ 47} Having sustained Hartford's two assignments of error, and having overruled HEC's five cross-assignments of error, we affirm the judgment of the trial court in part, reverse in part, and enter judgment for Hartford consistent with this opinion.
Judgment affirmed in part and reversed in part; judgment entered.
TYACK, P.J., and PETREE, J., concur.
APPENDIX A
{¶ 48} "B. EXCLUSIONS
{¶ 49} "1. Applicable to Business Liability Coverage
{¶ 50} "This insurance does not apply to:
{¶ 51} "* * *
{¶ 52} "k. Damage to Property
{¶ 53} "`Property damage' to:
{¶ 54} "* * *
{¶ 55} "(4) Personal property in care, custody or control of the insured;
{¶ 56} "(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the `property damage' arises out of those operations; or
{¶ 57} "(6) That particular part of any property that must be restored, repaired, or replaced because `your work' was incorrectly performed on it.
{¶ 58} "* * *
{¶ 59} "Paragraph (6) of this exclusion does not apply to `property damage' included in the `products-completed operations hazard.'
{¶ 60} "l. Damage to Your Product
{¶ 61} "`Property damage' to `your product' arising out of it or any part of [the "product exclusion"].
{¶ 62} "* * *
{¶ 63} "m. Damage to Your Work
{¶ 64} "`Property damage' to `your work' arising out of it or any part of it and included in the `products-completed operations hazard.' [The "work performed" exclusion.]
{¶ 65} "* * *
{¶ 66} "n. Property Damage
{¶ 67} "Loss of use of tangible property which has not been physically injured or destroyed resulting from:
{¶ 68} "(1) A delay in or lack of performance by you or on your behalf of any contract or agreement; or
{¶ 69} "(2) The failure of `your product' or `your work' to meet the level of performance, quality, fitness or durability warranted or represented by you or on your behalf."